The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. We will hear argument in our only case of the day, or the afternoon, I should say. We'll begin with the Government's Counsel. Good afternoon. May it please the Court, Benjamin Hayes for the appellants. I'm resuming four minutes for rebuttal. This case involves a straightforward question of statutory interpretation. 8 U.S.C. section 1225A deems all aliens who are present in the United States who have not been admitted or who arrive in the United States to be applicants for admission. And 1225B2A provides that all such applicants for admission shall be detained pending their removal proceedings. As both the Fifth Circuit and the Eighth Circuits have held, the plain language of 1225 mandates detention of aliens who cannot show that they are entitled to be admitted, regardless of whether the alien is actively trying to gain admission or how long they have been unlawfully present in the country. Petitioner's contrary interpretation is not only at war with the statute's text, but it would directly incentivize aliens to evade U.S. immigration laws, which is itself a criminal offense. And it would reimpose the exact same regime that Congress sought to discard when it adopted section 1225, a regime in which aliens who intentionally violate U.S. law are given bond hearings, while those who violate U.S. law, or rather presented a port of entry in accordance with law, were subject to mandatory detention. This court should reverse. So I'll start with the text of section 1225, which I've already alluded to. Again, the definition of applicant for admission includes all those who are present in the United States without having been admitted, and B2A mandates their detention if they cannot show clearly and beyond a doubt that they are entitled to be admitted. Now the petitioners here do not dispute that they are applicants for admission. They also do not dispute that they could not show that they are clearly and beyond a doubt entitled to be admitted. Their entire theory for why they are not subject to the mandatory detention bar under B2A is based on this two-word phrase, seeking admission, that appears in the statute. According to them, that requires that an alien be actively going out in search of and trying to acquire admission. And that interpretation of the statute is incompatible with the statutory text, which makes crystal clear that all applicants for admission are seeking admission by operation of law. And the key provision here is section 1225A3, which provides that all aliens who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected. And as courts have repeatedly held, this kind of or otherwise clause creates a catch-all relationship, such that that which comes before it is deemed and understood to be a subpart of it. This is what the 11th Circuit and the 7th Circuit held with respect to another statute. This is what the 5th and the 8th Circuits recognized with respect to this very statute. And that, of course, makes sense as a matter of spoken English. Does that make sense given the structure of this provision? Often we think of a catch-all as coming at the end of a list, right? X, Y, Z, you know, I guess I should say A, B, C, or otherwise Z. Here, otherwise comes before a list. It doesn't mean that it doesn't signify some sort of relationship between the terms, right? It's another definition is by other means, right? So an applicant for admission or in some other way seeking admission, right? It implies a relationship, but the structure, I found it odd to suggest that that structure means it's a catch-all at the end of a phrase is usually where we see a catch-all, isn't it? So I think it may normally, certainly in other statutes, it will come at the end of a phrase. I don't think that that's what determines the meaning of a catch-all. I think it can be if you have just an individual thing enumerated before it and a catch-all phrase. So for example, like if a high school principal said, all students who are football players are otherwise seeking to play sports, right? There's not like a multiple enumeration of things before that, but I still think the logic of that sentence means that football players are part of the broader catch-all category of those who are playing sports. So I think it can work either way, and I don't think, I'm unaware of any decision that kind of has, where the meaning of or otherwise turns on that factor, even though it might normally be the case where that is so. I still think the meaning holds that therefore in this context, applicant for admission would be understood to be seeking admission by operation of law, and we think that makes sense not just by virtue of A3 and the relationship that it dictates, that it establishes between applicant for admission and seeking admission, but just as one commonly understand the phrases like seek and apply. Like one can obviously seek something without applying for it, but if you are applying for something, you are certainly going to be seeking it, and that's especially true if the thing you're seeking is admission. If you apply for admission to a college or club, you are necessarily seeking admission to the college or club. And so applied here to this statute, what their definition of seeking admission just cannot be, because what an alien is doing in terms of going out in search of or trying to acquire admission is irrelevant to the statutory scheme. The statute deems them to be applicants for admission if they are present in the United States without admission, full stop. So if that's the case, why then did Congress add the language alien seeking admission in 1225-2A? If it necessarily includes it, then why would both phrases be listed? It seems to render the seeking admission language superfluous, and we're not supposed to assume that all words are there for a meaning. So I take the point on surplusage. I think actually the best way to read that is the way the Eighth Circuit did, which is that it is just a description. Consistent with our read of A3, it is just a description of what an applicant for admission does. Now, could Congress have written that provision differently? Of course they could have, but I think that that is what is happening. They are just describing what an applicant for admission does, and as A3 indicates, an applicant for admission necessarily is seeking admission full stop. And to the extent that you think redundancy is a problem there, I think what I just described is, if not a full answer, a partial answer to that. But I think also petitioners put a lot of weight on redundancy in this context, and also with respect to 1226-C, and I think they are trying to give it too much weight than the Supreme Court says it should be given. I know courts are supposed to avoid it, but the Supreme Court has said it is not a silver bullet. It does not exist to override otherwise clear text. And I do think, too, that if you thought there was a problem with surplusage, and thought that you needed to adopt their interpretation of seeking admission in B2A, that you would create a much more significant problem in B2 itself that would be greater than any problem of surplusage, because it would put subparagraph A on a collision course with subparagraph C. And subparagraph C doesn't get a lot of attention because it's really not substantively relevant to this case, but what it does make clear is that an alien described in subparagraph A is an alien who can arrive at or between ports of entry. It refers to in the case of an alien described in subparagraph A, and then refers to them as someone who is arriving whether or not at a port of entry. And the trouble there is that as far as I can tell, based on their interpretation of seeking admission, I don't know how someone would do that between ports of entry. I think it would automatically have to be at a port of entry, because if someone comes between ports of entry seeking asylum, for example, asylum does not get you admission. And I don't think someone would say they could come across the border between ports of entry and submit a visa application in that context. That's just not how it's done. So as a practical matter, I think their interpretation of seeking admission necessarily renders B2A effective only at ports of entry, but that isn't compatible with the surrounding statutory context in subparagraph C. That is not a flaw of our interpretation. Our interpretation recognizing the applicant for admission is seeking admission, allows for applicants for admission as anyone who's arriving, whether or not between ports of entry, or present. So that whole issue between B2A and C is a non-issue in our interpretation, and our interpretation makes sense with A3 as well, and the relationship that it establishes. Now, I think there are other problems within 1225 itself that arise from their interpretation. One more of them is that I think their interpretation effectively guts the definition of applicant for admission itself. And I think it's relevant here to note that Congress did not add the definition of applicant for admission in the definitional provision. What is the definition of applicant for admission? It is anyone who is present in the United States, anyone who is arriving in the United States, or present in the United States without having been admitted. Is that a definition? I know that's in A1. It says those two categories of aliens shall be deemed to be applicants for admission. That does not read to me like a definition. 1101 is the definitional section, and it uses words like, it would say something like, applicant for admission means X, Y, Z, or an applicant for admission is fill in the blank. Congress didn't do that here. It said these two kinds of aliens shall be deemed applicants for admission. So applicant for admission seems to mean something, and Congress is telling us you should consider an alien who is present without being admitted or an alien who is arriving in the U.S., consider them to be an applicant for admission. They are deemed applicants for admission. But don't we have to get the definition of applicant for admission from somewhere else? I'm not sure where it would come from. Well, I might suggest 1101 is the definitional section, and it has a definition of admission. Congress defined admission as lawful entry into the United States after inspection authorization. An applicant is someone who applies, which is one who makes a request. So an applicant for admission, putting it all together, is one who makes a request for lawful entry into the United States after inspection authorization, under the definitional provisions that Congress gave us. So then 1225A1 is telling us an alien present without admission, without having been admitted, and an alien who is arriving shall be deemed an applicant, one who is requesting lawful entry. Is that right? That seems to be what Congress is saying. Deem these two categories as people who are applying for lawful entry. We know they're not actually applying, but deem them to be applying. Consider them as though they are applying for entry. Or that they are. I understand the point about deeming, but I'm not sure that anything turns on that as opposed to Congress saying they are that for purposes of the law, which is what a definitional provision would do. It seems to matter because folks are talking about it as though this is the definition, which would mean you take the definition and you plug it in anywhere you see the term. If we do that, there's a real question about whether applicant for admission, plug in the definition from 1225A1, whether that's the same as seeking admission. But if Congress has told us you are to consider everyone in this group as though they are applying for lawful entry, and we know they're not, but consider them as though they are, then it seems to me the question is, is applying for lawful entry the same as seeking lawful entry? And that's when we get to the question of whether those things are pretty much synonymous. I think that's right, although I'm maybe not following the distinction you're drawing between definition and deeming. The petitioner's argument seems to be it makes no sense to say that someone who has lived in the United States for 20 years is seeking lawful entry. They're not. They've lived here for 20 years. They haven't tried to get in lawfully. They're not asking to be admitted lawfully now. But the deeming provision in A1 seems to be where Congress tells us, right, we know that, but we want you to treat them like they're applicants for admission anyway. You are deeming them as applicants for lawful entry. Well, I absolutely agree with that. I thought you might. I agree with that, and I also agree with the point that you have to read seeking admission in context with applicant for admission. I think that's one of the problems that the Second Circuit ran into whereas it thought, well, this is, we'll call it a defined term, even though it's a deeming term, but whatever, because it has some specialized definition given to it that somehow that means that we put it over here and then just focus on seeking admission and what it means in isolation. I think that is just an interpretive flaw. You have to understand both terms. They appear many times in the same statutory provisions in context with one another. So yes, Congress chose these particular words to be the label for those who are present in the United States without having to be admitted. So yes, the executive must treat them to be this category of person, and I think seeking admission, and A3 reflects this, seeking admission has to be understood in light of that determination. I don't think that's the same thing as I think petitioners say is reading the definition of applicant for admission into seeking admission. It is, however, recognizing that words in a statute must be read in context, and they do influence the meaning of the other. In my one minute left, I do want to highlight just one other problem which I think comes about from their interpretation, which is that I think it does. I was starting talking about the definition of applicant for admission, the deeming provision. I think it's relevant that Congress put it in 1225 as we were discussing, and I think the inference there is that Congress wanted it to do, that expansive definition, to do a lot of work in 1225. I think the upshot of their interpretation is that in the vast number, if not virtually all, of the situations in 1225 where applicant for admission appears, it is then cut back to doing almost nothing. It's not just by virtue of seeking admission. It's not just cut back to the subcategory of arriving alien, but to a subpart of that subpart, because not all arriving aliens would be going in search of and trying to acquire admission. I think it's very odd to think that Congress was going to input this expansive term in 1225 and then have it do virtually no work throughout 1225, and this is one of the points that the Fifth Circuit made, and I think that is in contrast to, another reason why that shouldn't be the understanding, that's in contrast to 1225B1, which does deal with applicants for admission, but a subset of applicants for admission, and rather than doing something like they suggest, using the broad term and using two phrases to cut it back to some subcategory, they just refer to arriving aliens, or if a more specific subcategory, they describe them. That's how Congress would have done it, and they did it in B1 if that was their objective. I see I'm out of time. All right, thank you. We'll hear from Petitioner's Council. May it please the court. I'm Mike Conigo for Petitioner's Appellees. I want to jump into the conversation and start with three points. First, the government's position violates the statute. Section 1226 applies to those who are living in the country and allows for their release on bond, while Section 1225B2 mandates detention for those who are processed at the border while seeking admission into the country. This is confirmed by the statute's text, structure, history, three decades of agency practice, as well as what the Supreme Court said and the Solicitor General said in Jennings. Can I ask you about the processed at the border restriction? 1225B1 says it's about an alien who is arriving in the United States. It uses that language at multiple points. So an alien who is arriving in the United States and then tells us what will happen in that context. B2 doesn't use that language. It says, in the case of an alien who is an applicant for admission, here's what happens. Your interpretation reads B2 as an alien who is arriving in the United States. So why isn't that a problem? Judge Rushing, we don't think that our interpretation equates arriving with seeking admission. We think that those two could mean different things. There are more people who are arriving at ports of entry than there are seeking admission. A common example, for instance, is a lawful permanent resident. Sorry, I'm asking because you just said that B2 is all about aliens who are arriving at a port of entry. But that's literally what B1 says. B1 says an alien who is arriving in the United States. But B2 doesn't say that. It uses a different phrasing. Congress says, in the case of an applicant for admission. So why should I read that to mean in the case of an alien who is arriving in the United States? Because, Your Honor, we have to read the entire provision. And it says, in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt admissible. So seeking admission is doing the work to limit who can fall within the detention provision at 1225 B2. And I was referring to an example of an arriving alien who is not seeking admission. And this illustrates how there are some applicants for admission who are seeking admission. But there are some who are not. And this is why the words that Congress chose in 1225 B2 has meaning. And it is only petitioner's interpretation that provides meaning to all the words. So back to the lawful permanent resident. This is a green card holder. When they return from a trip abroad, they are deemed an applicant for admission under 1225 A1 because they are arriving at the port. However, returning lawful permanent residents are generally not seeking admission. They have permission to travel freely in and out of the country. And there's a statute that specifically says that, right? It says, they shall not be regarded as seeking admission. Yes, Your Honor. Congress had to clarify that for us. Yes, exactly. They are generally not seeking admission unless one of special circumstances apply. And one of those special circumstances is if they're attempting to enter at a time or place other than designated, right, not at a port of entry, then they're considered to be seeking admission, right? Yes, Your Honor. How is that true under your interpretation? Two responses. So this demonstrates that Congress can deem when they want somebody to be considered seeking admission. And second, what this shows is that if not for this provision, it might be unclear when a returning lawful permanent resident is seeking admission or not. Because the default is when somebody is showing up at a port of entry, going in front of an immigration officer to try to get authorized entry into the country, that would put the person under seeking admission. But returning LPRs are not. But 110113C, which is what we're talking about, is a place where Congress tells us that an alien is seeking admission when they are evading a port of entry, which seems to be irreconcilable with your definition of seeking admission, which is presenting oneself to the immigration officer to lawfully request entry. Right, Your Honor. And there, it's demonstrating that Congress knows how to deem somebody to be seeking admission. They did not do that here for people like petitioners. What they did instead was deem them to be an applicant for admission. That is a term of art. And as the Supreme Court has recognized in Sturgeon v. Frost, when Congress deems something to be something else, it's recognizing that it actually doesn't have those qualities. Right. And in Sturgeon, the court said it's not that that was about national parks, right? This is not geographically part of the park. But as a matter of law, we treat it as that way, right? It's geographically false, but as a matter of law, true. We consider it to be true. It's not a name that we attach to it, right? It has meaning. It has to be, we have to honor Congress's deeming, right? And here, they deemed these two categories to be applicants for lawful entry. And so that's not actually true. They're not actually trying to enter lawfully. But Congress has said, consider them to be applying for lawful entry. Treat them as though they're applying for lawful entry. Two responses, Your Honor. So when Congress deemed them to be an applicant for admission, it's not using applicant in the ordinary sense. That would be- Where do we get the definition of applicant that you think Congress is using? Well, Your Honor, I think here, what we're talking about is a term of art. And that term of art applies to their removal proceedings. So they are treated as inadmissible. They're subject to inadmissibility bars. Sorry, I thought you said applicant. Congress didn't intend the ordinary meaning of the word applicant. Yes, Your Honor. But they didn't define the word applicant anywhere. So how would I know not to just open my dictionary? I think, Your Honor, we're slightly talking past one another. What I am saying is that an applicant for admission, that is a term of art. And thus, we cannot presume an applicant for admission is like an ordinary applicant, like a college applicant who is seeking admission into college. This is the INA we're talking about. It uses technical phrases all the time. And Congress can give special meaning to terms like applicant for admission. It does that in 1101. It defines admission as lawful entry into the United States after inspection and authorization. So an applicant for lawful entry into the United States after inspection and authorization. That's what applicant for admission means. Respectfully, Your Honor. According to Congress, in the terms of art that it defined for us. Respectfully, Your Honor, we do not think that Congress was importing that definition of admission into applicant for admission, because there are applicants for admission who cannot seek admission. There was the lawful permanent resident example that we discussed. And I'll discuss a different term that I think helps illustrate why there's no one-on-one that's happening here. We cite the Ninth Circuit's en banc decision, Torres v. Barth, which looked at the term application for admission. There, application for admission is referenced in 1101 as not an application for a visa. And the court went on to say, sure, we have to look at what an application for admission is. That's in reference to admission, which refers to lawful entry at the border. An applicant for admission, however, they said is a term of art, and we cannot say that an applicant for admission is always making an application for admission. You can't connect the two. Similarly here, an applicant for admission does not always seek admission. That's a separate condition. Do you agree that these petitioners are applicants for admission? Yes, we do not dispute that. So you disagree with the district court. She held that neither one of them are applicants for admission. I just want to make sure that we all agree the district court was wrong when she says, quote, the court finds the petitioner is not an applicant for admission and is therefore not subject to 1225B. I'm not sure if that was in the specific opinion here or in the one that she referenced, but I think we don't dispute that she's an applicant. We're working from the same JA, right? Yes, I believe so. We're not fighting about whether they are applicants for admission. What we are looking at is the language of 1225B-2, which indisputably says, also in the case of an alien who is seeking admission, and that must be doing work, and the government relies on cases that disregard their surplusage canon only because the courts there were looking at interpretations that each introduced surplusage. Here, it is petitioner's reading that does not introduce surplusage. We can explain why there are applicants for admission who are not seeking admission, and we can explain how there are non-applicants for admission who are seeking admission. So what 1225B-2 does is it excludes people who are not applicants for admission and it excludes people who are also not seeking admission. And we have to also remember that, of course, the court needs to reconcile 1225 not in isolation, but looking at the statutory scheme as a whole. Well, Counsel, what's the logic behind Congress's decision to include non-citizens who enter the country illegally and are later apprehended inside the country as applicants for admission? What's the logic? It seems to me that both sides have a problem. Your problem is... The strength of your argument is reading 1225 and 1226 together, but you've got an underlying problem with your logic in terms of Congress's logic. Why did they operate in this fashion to include the people who entered the country illegally and remained in the country as applicants for admission? What is the possible rationale behind that? And then I think your opposing counsel has the obvious problem of surplusage. But neither position seems to do the complete job. So tell me what the rationale is behind... Why did Congress do it this way? Of course, Judge Keenan, we think deeming them an applicant for admission does a lot of work. There was a sea change that happened in IRA-IRA in terms of their removal proceedings. So Congress said, we are changing certain aspects of the entry doctrine so people who entered without inspection now are no longer considered deportable. They are considered inadmissible and subject to inadmissibility bars because they are an applicant for admission. However, Congress said nothing about abandoning the rules for detention. In fact, they said the opposite. If you look at the House committee and conference reports where it talks about Section 1226, the bond-eligible statute, Congress said expressly that it was restating the prior provision that provided bond for those who are unlawfully in the country. And it did that because the prior provision, 1252A, provided for detention and release on bond of those pending a decision on deportability. With the sea change of making them... Yeah, no, I agree with you. There's an obvious question. If counsel for the government, if Mr. Hayes's position is correct, then why do you have all these provisions in 1226? I don't think his argument accounts for that. I'm just asking you to explain the logic of Congress's decision in choosing to make applicant for admission and keep it that way with the ensuing changes in the immigration law, its decision to keep applicant for admission as the umbrella term. Is there any logic to that? And yes, Your Honor, as we discussed, it changed their status for removal proceedings, but it didn't change the rule for detention. And there were good reasons why Congress did that. We're talking about people who've been living here for decades. They have U.S. citizen families. They have no criminal histories. It makes sense why Congress did not want to force the agency to use limited resources and taxpayer money to lock these people up without any basic review over their detention. Conversely... Can I ask about Judge Keenan's question? I was curious about that as well, that Congress went to pains to define, not define, to explain who is or isn't an applicant for admission at the beginning of 1225 for the whole chapter, it says. That term is used frequently throughout 1225, but as the government points out, it seems that you would be carving it back to not cover everything every time it's used in 1225. I could only find, I think, maybe four other places where the term is used in the chapter, and it's only used once per provision. It doesn't seem to be, you know, getting a whole lot of action in other provisions. So it seems that applicant for admission should mean something and should include the folks who Congress said it should include in 1225. And so back to Judge Keenan's question, shouldn't we be honoring what Congress included there, and how does your definition do that? We think it honors it because applicants for admission are inspected under 1225A3. Some applicants for admission are subject to expedited removal under 1225B1. Some applicants for admission, those who are seeking admission, are subject to 1225... I'm sorry, did B1 mention applicants for admission? Yes, in the title. And so it does cover some people who are present in the country without having been inspected. And, Your Honor, we think that's actually the tool that Congress gave to the executive to deal with recent border crossers. But Congress specifically wrote 1225B2 to limit it to those who are seeking admission. And this doesn't come out of nowhere. It was in the prior statute, 1225B, which applied to inspection and detention of certain people arriving, seeking admission at the border. And we presume that Congress is aware of its prior laws and is intentional when it keeps the same phrase, seeking admission, in 1225B2. This is also laid out in detail in the amicus brief from the law scholars discussing how 1225B2 is the latest iteration of a long line of statutes applying to those who are seeking admission at the border. This is consistent with a longstanding scheme. We're not making this up. Our immigration laws have long differentiated between those stopped at the border, trying to enter, and those who have already entered and whom the governor is trying to remove. This was described not only by the Supreme Court in Jennings, but the Solicitor General said, under both the second Obama administration and first Trump administration, that people like our clients who already entered are subject to 1226. And I'll note that we are not arguing about the government's authority to detain. But 1226 doesn't use the term applicant for admission, right? It does not, Your Honor. It doesn't have to. It talks about an alien who was arrested in the interior.  It doesn't say arrested in the interior. It just says an alien, right? Right. But it applies to those who are in the interior because 1225B2 applies to those who are, again, seeking admission into the country. Right. You're also then relying on the fact they're seeking removal. In 1226, they're talking about removal from the United States, right? Yes, Your Honor. If someone is placed into 240, 1229A, removal proceedings, they generally do have access to a bond because, again, this reflects not only the longstanding differentiation between those stopped at the border and those in the country, but also the Supreme Court's over a century of precedent recognizing that people in this country have more rights. Adopting a scheme like this would not only explode the system, but also run into serious constitutional problems. And I want to go back to what Congress actually did in IRA-IRA. We know- Sorry, just to be clear. The people who are covered by 1225B2, that's the same. They're also being held for removal proceedings under 1229, right? It's the same removal proceedings, right? That's true, Your Honor. And generally, the people who are covered under 1225B2 are the returning lawful permanent residents that we discussed before who are both applicants for admission when they appear at a port of entry and also considered seeking admission because of a prior crime or having abandoned their status. That's the classic person. Or because they're not at a port of entry. So those who are arriving at a port of entry are considered seeking admission because they're not at a port of entry. Right, but Your Honor, the key is that they have been deemed to be seeking admission at that point. But how would they be covered if they're not at a port of entry under your theory? We don't dispute that people who come between ports can be covered under 1225B2. I think we've made that clear in our briefing. Someone who is caught on the threshold of entry, for instance, like the petitioner in Thurisidium, never entered and is caught, they are also subject to 1225B2. In practice, they are subject to expedited removal because that's actually more favorable to the government. But what if they're seeking a status, a protected status? They're not seeking lawful admission. Admission is defined, again, as something that occurs at the border when, as this court has said, it contemplates a physical crossing from outside the United States into the country upon inspection and authorization by an officer. So when somebody enters between ports, generally what happens in the majority of cases is that they're looking for an officer and they're submitting to the inspection at that point. Even though they come in between ports, they don't come to a lawful port because they want to find an immigration officer and enter lawfully. Yes, Your Honor. I read your brief to be restricting this category of seeking to those who are seeking to lawfully enter. I read your brief to be emphasizing the lawful part of that. The lawful part of that is that they would be subjected to an inspection with the hope of being authorized to enter. I understand that admission sounds like a very odd concept, but this court has looked at admission and said this is a procedural matter. What we're talking about is the physical crossing into the United States with the sanction of officers. So it doesn't matter if the person is seeking asylum or something else. What matters is that they're subjecting themselves to an inspection by an officer. There is no dispute, Your Honor, that our clients have already entered. We're not talking about a borderline edge case here. We're talking about people who've been living in the country for decades. Those are the people most impacted by the government's new policy. And I see I'm over my time. If I can just close by addressing the government's two main points very quickly. So as we've discussed, the government's position is essentially that all applicants for admission must be seeking admission. But this ignores how applicant for admission is a term of art. It ignores the definition for admission. It creates surplusage throughout 1225. It nullifies whole parts of Section 1226. And it's inconsistent with what the Supreme Court said in Jennings and Preop. Second, the government claims that Congress must have imposed mandatory detention on millions of people to deter illegal entry. Can I ask you about 1226 before you sit down? When the district court concluded that 1226 is the provision that applies, the court ordered the government to release the petitioner unless the government proves by clear and convincing evidence that petitioner poses a danger or proves by the preponderance of evidence that he has a flight risk. Where does that standard, that burden on the government come from? There was no citation. Where does that come from? Well, Your Honor, courts sitting in habeas have the authority to carve whatever remedy they think is equitable in that situation. I ask because the regulation puts the burden on the alien. The regulation puts the burden on the alien to demonstrate to the satisfaction of the officer that their release would not pose a danger and that they're likely to appear for future proceedings. And we have a case about that. In 2024, we issued a decision called Miranda v. Garland where we dealt with someone saying the burden should be on the government, not on the alien. We said it's on the alien. And I was confused where the district court was getting the authority to put the burden on the government, and I thought you might know if there's some intervening precedent I'm unaware of. No, Your Honor, but again, the court had authority to craft whatever remedy it saw fit. And here the government doesn't dispute. Does it have the authority to contradict regulations? I don't hear the government to be disputing the remedy that was ordered here. I mean, the remedy is not in front of us. This has happened multiple times now in the district courts, and these habeas cases are coming up all the time, which is why we agreed to hear this on expedited review. And I just wanted to make sure I'm aware of what's going on in the district courts and what the authority for it is. So I thought I'd ask you if you knew. If not, that's fine. No, I don't think there's anything in the record to explain that the government contested this. Again, also they don't contest that either petitioner is a flight risk or burden. They were released on bond. They've been returned to their communities and are back with their families. I want to return just to close the last point I was trying to make about why it made sense Congress did not do this. We have to remember Congress does not hide elephants in mouse holes. The government claims that 30 years ago Congress adopted the largest detention mandate in the history of this country, but there is no evidence of that in the record. And, in fact, when Congress did expand mandatory detention, it used a scalpel. Thank you very much. We appreciate it. We ask you to affirm. Thank you.  Just a few points in rebuttal. There was some discussion about whether it was possible under petitioner's theory to arrive between a port of entry consistent with their definition of seeking admission. It was unclear to me exactly what was being proposed, but I don't think I heard an answer that actually suffices. I don't know still any way where someone under their theory of seeking admission could obtain lawful entry, not asylum, which does not count as an admission. And just arriving to, as they say, I think page 36 of the brief, entering, finding an officer and saying, yes, I want to continue to enter, is not an admission. Officers, if you have a visa and a right to enter, that's one thing. You can't just ask an officer to come in and that's the end of that. Can I ask what work then 1226 does if under 1225 all aliens present in the United States can be held without bond? Why do we have 1226 with these exceptions? I'll address A and C. So why we have 1226, both A and C address is all expansive. It's a far broader category. It covers aliens, in other words, not just applicants for admission. And so it would cover, for example, and govern the detention of anyone who was admitted and subsequently becomes deportable for any number of reasons. That's true of 1226A. So there's plenty of work for 1226A to do. Granted, these are overlapping provisions, and so I think the relevant way to approach this is where they overlap, which one is the more specific, and that's clearly true of 1225B2A. It is mandatory. It addresses a subset, applicants for admission. Now as to 1226C, it's much of the same answer. There are four grounds pre-Lake and Riley Act. There are four grounds in 1226C that trigger this mandatory detention. Two of them are listing grounds of deportability. There's no overlap whatsoever with 1225B2A under our interpretation because those are all individuals who would have been admitted and are subsequently removable for some other reason. So there's plenty of work that they do even under our interpretation of 1225. But what about the Lake and Riley Act? Weren't those individuals already subject to mandatory detention? Well, they would have been, but I think the really important point about the Lake and Riley Act is that it was enacted after 28, 29 years of executive practice not enforcing 1225B2A to mandate detention. So why wouldn't Congress have just made 1225B2A more clear? If Congress knew that it was being, what you say, wrongly interpreted, rather than passing this narrow, relatively narrow statute that adds another category to 1226, why wouldn't Congress simply have made clear what you say was its intention all along? Well, I don't think, I didn't mean to say Congress knew that it was being wrongly interpreted. I think Congress is aware of the non-enforcement that had taken place. In other words, they were aware of how the executive was enforcing the immigration laws and that under that practice of enforcement, this category of person was not being detained. And so they addressed a particular problem that had arisen, which was having people who were committing crimes, violent criminal aliens, who were being released. So you're saying that Congress would have acquiesced to an incorrect interpretation of the law that it passed and gone down that path? That doesn't make a lot of sense. No, I don't think Congress acquiesced in it because I think Congress was just addressing a particular problem that had come about as a consequence of the situation involving Lakin Riley herself, as well as others, where you had people who were violent criminal aliens who were committing violent crimes. And that was the thing that they were focused on. And the fact that they didn't do a whole overhaul of the detention statutes at that time, I don't think it's unusual for Congress to see a particular problem that concerns them and to respond accordingly. What about, to Judge Berner's question, what about C1A and D? I'll take your point that E, from the Lakin Riley Act, that tells us what the 2025 Congress thought. But yet there's two exceptions, or whatever they are, there's two categories in C that refer to aliens who are inadmissible, and that's the same Congress that wrote 1225. How do we reconcile that? So two points on that. First of all, our position is, and I think both the Fifth Circuit and the Eighth Circuit agreed with us on this point, that as to those categories of inadmissible aliens, 1226C still does additional work by operation of limiting the executive's discretion to release on parole. So there's still additional work, in other words, done under C with respect to those categories of inadmissible aliens. And again, both the Fifth and the Eighth Circuits agreed with that. The Second Circuit, which went against us on everything, didn't even address that. So at this point, no court of appeals has said that's wrong. So I think that's one. But even if you thought that that wasn't true, and that is independent work that it is doing, so it's not pure surplusage, even if you thought that's wrong, I think I would go back to the lesson of Barton v. Barr, where the Supreme Court says surplusage and redundancy is common, commonplace in legislative drafting, not just as a consequence of inadvertence, but in circumstances when Congress wants to be crystal clear and doubly sure and exercise a belt-and-suspenders approach. And I would say that the categories of aliens covered by those two inadmissibility prongs under 1226C, they're the quintessential example of who Congress would have wanted to use belt-and-suspenders. We're not talking there about, you know, jaywalker or petty offenders. These are terrorists, those who are affiliated with terrorists, drug smugglers, and human smugglers. And I think that's exactly the category of aliens Congress would have said, yeah, we want to be absolutely sure that you're subject to mandatory detention. That's exactly the kind of belt-and-suspenders approach that the Supreme Court in Barton said Congress often does. And so even if you don't buy the parole point, which I still think is right, that's a full answer on that point. Counsel, if we were to agree with you, it's my understanding that approximately 6 million people would be subject to mandatory detention without the possibility of a bond hearing. Is that right? I don't know the exact number. It's in the millions. Yes, absolutely. So given that, what's the anticipated timeline for these removal proceedings to take place? I don't know exactly. What I do know is that there is an EOR policy in place where detained cases are prioritized. So at current status, a lot of people have been let out on bond because the district courts have been doing that. Those who have remained detained are on an expedited track. I don't know exactly what the precise time is for that, but if there's a detained case, they are prioritized. I'm asking obviously because of the potential constitutional problems and of indefinite detention. And it seems to me when you're speaking about potentially millions of people being detained, that even with expedited proceedings, the detention could be indefinite. Well, I'm not sure indefinite. So I'll say two things about that. One is this is not the only provision where detention of large numbers of individuals is provided for in 1225. 1225b1, everyone acknowledges, is a mandatory detention statute. And there was a large number of individuals coming across the border, millions, but for the parole option, which is also available under 1225b2a, they would be subject to mandatory detention. So that concern is not unique to b2a at all, and no one disputes that b1 has mandatory detention. I had one other response to your honest question, and I can't recall what it was. I was just asking the practical. It's really just the practical question of change. I mean, this is clearly a change in policy. You can see that, that this hasn't been the policy for the last 30 years. And so I'm really just asking a capacity and timing question because I do think it implicates due process. Yeah, so I'll just address the due process clause in particular. So I do think there are constitutional avoidance is raised in the brief. I do think that the due process constitutional avoidance would be relevant but not here because the claims that they raise, the due process claims they raise, are addressing the fact of detention. That's all. Not a duration of detention claim like was at issue in Zabidas about length or in there it was indefinite detention. Here it's just day one, I am detained, and I don't have a right to a bond hearing. That is the due process claim that is presented in both of those petitions, and I think cases like Damore v. Kim, and in fact Zabidas itself, show that that is not a due process problem. Now, you could have a problem arise, but it would be a separate claim and not one presented here if proceedings went on for whatever length of time, a year, two years, three years. I'm not saying which one of those is the line. So I recognize that is a distinct problem, but I don't think it's one that weighs on the interpretation of statute here. The one that would would be if it was to say there's a due process problem purely by not giving the right to a bond hearing immediately, and I think the Supreme Court's cases in Zabidas and Damore address that. Thank you, Counsel. Thank you. We appreciate both of your arguments. We will come down and greet Counsel, as is our custom here in the Fourth Circuit, and our courtroom deputy will adjourn court until tomorrow. It says the honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Allison J. Rushing, Nicole G. Berner, Barbara Milano Keenan